Smith, J.
— “ This case has been argued for the appellants, by their counsel, earnestly and ably, but we have no hesitation in coming to the conclusion that they have no just cause of complaint. The whole scope and tenor of the instructions given, were quite as favorable to them as the law would warrant.
“Malice, in its common acceptation, means ill will towards some person, but in its legal sense, it is defined to be a wrongful act, done intentionally, without legal justification or excuse ; and in ordinary actions for slander malice in law is sufficient, and is to be inferred from the publication of the slanderous matter without such justification or excuse. In most, perhaps in all instances where an injury is committed against the person or property of another, the actual intention of the author of the mischief is immaterial. The law considers every one whose neglect, carelessness, and want of due regard to the rights of others, occasion injury to others, equally culpable and bound to make reparation to the extent of such injury, as one who wilfully does the mischief. It can make no difference to the party injured, whether the injury was occasioned by a wilful act, or by negligence or a careless disregard of his rights, and such a consideration ought not to affect his remedy. In the case of Prosser v. BromagE, (4 B. & C. 247) it was held, that in a case where the law implies such -malice as is necessary to sustain the action, it is the duty of the Judge to withdraw the question of malice from the con-sidera tion of the jury. No doubt, however, this implication of law may be rebutted, by evidence of facts which would afford a legal excuse for the publication of the slander, as in the case put by the Judge at the trial of this case below, in which slanderous matter might be published by the employees of a printing office with the *234 materials of the proprietor, but which he could not, by care and diligence in the transaction of his business, have prevented, and it would be a question for the jury whether such facts existed. lint what facts, when proved, would amount to such legal excuse, would be a question of law, and we may test the propriety of the instructions by enquiring, whether any facts available to the appellants as an excuse, were proved in the present case.
“ It is plain, from the general context of the decisions in cases of this kind, that booksellers and publishers of newspapers are considered as standing in situations of peculiar responsibility, and far from relaxing, in their favor, the general rule, that all persons are bound so to carry on their trade or business as not to injure others, the courts of law have felt the necessity of applying it, in their cases, with the utmost stringency. The press is a most potent engine for the diffusion of both good and evil, and while on the one hand, we can scarcely estimate too highly the advantages of its perfect freedom for all useful purposes, on the other, we cannot but be sensible of the necessity of a strong curb to prevent such freedom from degenerating into licentiousness.
“ The law, however, in holding publishers of books and newspapers responsible for slanderous attacks upon private character, only carries out with respect to them, the same principles which are applicable to injuries resulting from the transaction of other kinds of business. It is a general rale, that a principal is liable for injuries resulting to others from his neglect, or the neglect or incompetency of his agents in the course of his employment, as well as for those resulting from his own positive or intentional acts. So, it has been repeatedly held in the case of booksellers, that when a book or pamphlet containing slanderous matter was sold from the shop in the usual course of trade, the proprietor was responsible, and that it was no excuse that he was ignorant of the contents, or that it was sold by a servant when the master was absent at a distance and had no knowledge, that such a book had ever been in his shop or was sold on his account. Bac. Abr. Tit. Libel, 458; 2 Starkie on Slander, 29 — notes. (Wendell’s Ed.)
“ In the case of Rex v. Gutch, Fisher, and Alexander, 1 M. & M. 433 (22 Eng. Com. L. R. 353), the defendants were proved to be proprietors of the newspaper containing the article charged to be libelous. It was then urged for the defendant Gutch, that he was m *235 a condition to show that he was perfectly innocent of any share in the criminal publication, as he was living, at the time, more than an hundred miles from the place of publication, without taking any share whatever in the management of the newspaper, which was ’..’holly conducted by Alexander ; but it was ruled by Lord Tenterdon that this was no excuse, and that a person who derives profit from, and who furnishes the means for carrying on the concern, and en-1 rusts the conduct of the publication to one whom he selects, and in whom he confides, ought to be answerable, even criminally, although it cannot be shown that he was individually concerned in the particular publication. See, also, on this subject, Andres v. Wells, 7 John. R. 260, and Rex v. Walter, 3 Esp. R. 21. According to the principles established by these cases, and we have no doubt of tbeir correctness, the circumstances detailed in the present case, afford no excuse for the appellants. If Air. Dunn himself, had been at home, and had suffered one of his journeymen to insert the libelous article in his paper under his own eyes, he, certainly, could not have excused himself by proving that he had given the journeyman private directions not to do so, and if he chose to leave the management of his business in the hands of a foreman, he responsible for the neglect or ineompetencvTqf lía not obeying Ids instructions, and in suffering sucl aching to be (Mii. If publishers could avoid responsibility, by telling gp||j^[^|ii|)t to admit anything personal, and then absenting themselves while a libel was inserted, they could very easily Pdoers vehicles for the circulation of the most atroci(^4^Iandere..wiia per-feet impunity. But, indeed, it would be presumedfiS^ícases, that a principal in giving charge of Ms business to an agent, directed such agent to transact it lawfully, and proof that he instructed such agent not to manage it unlawfully, would seem to be superfluous and irrelevant, there being no question raised as to what instructions were given.”
Judgment affirmed, &c.